UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NANJING CIC INTERNATIONAL CO., LTD.,

                    Plaintiff,

    v.

JAMES SCHWARTZ and FOUNDRY
ASSOCIATES, INC.,

                    Defendants.

_____

**DECISION AND ORDER**

6:20-CV-07031 EAW CDH

## <u>INTRODUCTION</u>

Plaintiff Nanjing CIC International Co., Ltd. ("Plaintiff") asserts claims of breach of fiduciary duty and unjust enrichment against defendant Foundry Associates, Inc. ("Foundry") and its president defendant James Schwartz ("Schwartz") (collectively "Defendants").[1] (Dkt. 1). More specifically, Plaintiff alleges that Defendants engaged in "fraudulent conduct in stealing from [Plaintiff] its customer base . . . in coordination with non-party E. Chen ('Chen'), a resident of China and a former . . . employee [of Plaintiff]." (*Id.* at ¶ 1).

At the request of the parties, the Court entered a Stipulation and Order Governing the Exchange of Confidential Information. (Dkt. 56) (the "Protective Order"). Pursuant to the Protective Order, the parties may designate discovery material produced in connection with this action as "Confidential" or "Attorneys'

---

[1] Summary judgment in favor of Defendants has previously been granted as to Plaintiff's breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud claims. (*See* Dkt. 41 at 22).

Eyes Only" ("AEO") under certain defined circumstances. (*Id*. at ¶ 2). Currently pending before the Court is Plaintiff's motion to remove the AEO designations from certain documents produced by Defendants, as described more fully below. (*See* Dkt. 162-1). Plaintiff has also requested attorney's fees and costs associated with bringing its motion pursuant to Federal Rule of Civil Procedure 37. (Dkt. 162-1 at 9; *see also* Dkt. 162-2 at ¶ 28; Dkt. 172 at 16-17).

Defendants oppose Plaintiff's motion to de-designate and have filed a cross-motion seeking to impose upon Plaintiff costs incurred in producing de-designated discovery materials pursuant to Federal Rule of Civil Procedure 26(c)(1)(B). (Dkt. 170). For the reasons that follow, both Plaintiff's motion and Defendants' cross-motion are denied.

## BACKGROUND

### I.  Factual Background

Plaintiff is a trading company based in Nanjing, China, that sources, distributes, and sells component parts to manufacturers. (Dkt. 41 at 3; Dkt. 82 at 1). Foundry is a New York corporation that designs, engineers, and sells metal castings, as well as machined parts and various other products. (Dkt. 41 at 2). Plaintiff alleges that it entered a verbal contract with Defendants in 2003 whereby Defendants agreed to act as Plaintiff's sales agent in developing United States customers. (Dkt. 41 at 3-4; *see* Dkt. 82 at 2).

"The gravamen of [Plaintiff's] complaint is that Foundry and [Plaintiff's] former employee E. Chen ('Chen') colluded to steal [Plaintiff's] U.S. customer

base." (Dkt. 82 at 2). Chen resigned her employment with Plaintiff in 2013, and Defendants represent that in 2014, Chen began operating PINO Industry Co., Ltd. as a trading company in China. (Dkt. 41 at 4; *see* Dkt. 82 at 2). According to the complaint, following her resignation, Chen worked with Foundry to source component parts for U.S. manufacturers. (Dkt. 1 at ¶¶ 35-55).

After failed attempts by Plaintiff and its president and owner Xiao Su ("Xiao") to persuade Foundry to transition its customers back to purchasing from Plaintiff, Xiao's and Schwartz's relationship ended in 2016. (Dkt. 41 at 5-6). Subsequently, Plaintiff commenced a lawsuit against Chen in China for her alleged wrongdoing. (Dkt. 1 at ¶ 36; *see, e.g.,* Dkt. 162-1 at 2; Dkt. 162-2 at ¶ 2; Dkt. 162-3 at 1). Plaintiff states it "prevailed at the trial level" against Chen (Dkt. 162-2 at ¶ 6) and "the Chinese appellate court issued a decision on [Plaintiff's] appeal," but it "is in the process of filing a petition for retrial [because] the appellate court's award of damages was significantly lower than Plaintiff's actual damages" (Dkt. 172 at 13).

## II.    <u>Procedural Background</u>

This matter has been referred to the undersigned for all non-dispositive pretrial proceedings. (*See* Dkt. 9; Dkt. 156). The case has a complex procedural history, familiarity with which is assumed for purposes of this Decision and Order. The Court has summarized the procedural background necessary to its resolution of the pending motions below.

After negotiation between the parties, the Court issued the Protective Order "to facilitate the production, exchange, and discovery in this action of documents, information, and testimony[.]" (Dkt. 56 at ¶ 1). The Protective Order provides for two levels of designation of discovery materials the parties produce: Confidential and AEO. The Protective Order limits the parties to using "Discovery Material designated as Confidential or [AEO] . . . for purposes of this litigation and for no other purposes." (*Id.* at ¶ 10).

In July of 2023, Plaintiff filed a motion seeking to remove the AEO designation from a 106-page summary sales and commission report (the "Sales Report") produced by Defendants. (Dkt. 62). In its motion, Plaintiff took the position that the entire sales report should be de-designated and available for use in the Plaintiff's litigation against Chen in China. Magistrate Judge Marian W. Payson, to whom the matter was then referred, entered an Order on October 20, 2023, granting Plaintiff's motion in part and denying it in part. (Dkt. 82) (the "October 2023 Order").

The October 2023 Order explains that the Sales Report contains sales and commissions information as to Defendants' business with Chen between 2013 and 2022, and that "the information in the Sales Report is organized by and presented in monthly tables containing seven different columns reflecting: (1) customer name; (2) invoice number; (3) total invoice amount; (4) amount actually received by Chen's company; (5) Foundry's commission rate for the invoice; (6) the total commission owed to Foundry for the invoice; and (7) [comments] concerning the

invoice." (*Id.* at 4) (citations omitted). "[D]uring oral argument, [Plaintiff] narrowed its request for de-designation to names of customers that [were] former [Plaintiff] customers and the invoiced amounts for those customers, agreeing to the AEO designation for the remaining information." (*Id.* at 5) (citations omitted).

Judge Payson granted Plaintiff's motion with respect to two discrete pieces of information—"the[] names [of prior customers] and . . . the Customer Invoiced Amounts[,]" which she described as "the monthly amounts [customers] were invoiced by and paid to defendants from 2013 through 2022[.]" (*Id.*) (quotation omitted). Judge Payson further held that while "defendants ha[d] failed to establish good cause for designating as Confidential Customer Invoiced Amounts before 2018," they did establish good cause to designate post-2018 Customer Invoiced Amounts as Confidential. (*Id.* at 14). Judge Payson instructed Defendants to produce "a de-designated and redacted version of the Sales Report" containing "information predating 2018 relating to prior [Plaintiff] customers limited to their names, the invoice number, invoiced amount, and amount received." (*Id.* at 15).

Judge Payson further instructed that "the redacted Sales Report should be marked 'For Litigation Only' to reflect [Plaintiff's] agreement to use the information only (1) in connection with this litigation; and (2) to submit to the court in China to support its damages claims against Chen in the Chinese Litigation." (*Id.* at 15) (quotation and alteration omitted). After entry of the October 2023 Order, "Defendants produced redacted certain Sales Reports for

2014 – 2022 . . . in full compliance with the" Court's instructions. (Dkt. 162-1 at 3; *see also* Dkt. 170-3 at ¶ 8 ("On November 3, 2023, [defense counsel] produced to Plaintiff's counsel a redacted set of commission reports in compliance with the Court's order.")).

On November 7, 2023, Plaintiff filed a motion to compel seeking, in part, additional information regarding sales and commissions. (*See* Dkt. 84). On January 8, 2024, Judge Payson entered an Order directing the parties to "confer to attempt to agree upon a stipulation concerning the authenticity and admissibility of the sales and commissions reports and defendants' production of underlying data necessary to identify the products associated with the amounts reflected in the sales and commission reports." (Dkt. 92 at 1-2). The parties were unable to reach such an agreement, and Plaintiff filed a further motion to compel on February 12, 2024. (Dkt. 99). On April 11, 2024, Judge Payson entered an Order that: (1) directed Defendants to produce sales and commission reports from 2023 and the underlying invoices "consistent with prior productions and Court orders"; and (2) noted that Plaintiff had withdrawn its request for "an order compelling defendants to produce product drawings and specifications" because Defendants had "agreed to produce redacted versions of the invoices and to designate them as 'Confidential,' not 'Attorneys' Eyes Only.'" (Dkt. 111 at 2-3). Judge Payson explained that the redacted versions of the invoices would "permit [Plaintiff] to view the product numbers and product descriptions contained on the invoices, with the remaining information redacted" and that "[t]he unredacted

versions of the invoices, which were previously produced, will retain the Attorneys'
Eyes Only designation." (*Id.* at 3).

Plaintiff contends that Defendants "[s]ubsequently, and up until October
18, 2024, . . . produced additional Sales Reports and commercial invoices multiple
times," and "improperly designated entire Sales Reports included in the
Subsequent Productions as AEO[.]" (Dkt. 162-1 at 3). Plaintiff further contends
that Defendants violated the October 2023 Order by producing sales reports and
invoices that were not designated For Litigation Only. (*Id.* at 4).

On January 24, 2025, after "numerous rounds of written communication
and a meet-and-confer via video conference" (*id.*), Plaintiff filed the pending
motion to de-designate (Dkt. 162). Plaintiff asks the Court to remove the AEO
designation: (1) from the 2023 and 2024 sales reports produced by Defendants
(Dkt. 162-2 at ¶ 27; Dkt. 162-1 at 3, 6); and (2) from "the date[,] . . . the invoice
number, and . . . [the] Total Amount in the last column" of the invoices Defendants
have produced. (Dkt. 162-1 at 7; Dkt. 172 at 10). Plaintiff also asks "the Court [to]
impose attorney's fees and costs result[ing] from improper AEO designations,
including the fees and costs associated with bringing [its] motion" pursuant to
Rule 37. (Dkt. 162-1 at 9).

On February 18, 2025, Defendants filed their opposition, maintaining that
they "ha[ve] taken a measured approach to confidentiality designations . . . [and
have] demonstrated [their AEO] designations are proper[.]" (Dkt. 170-19 at 5).
Defendants' opposition includes a cross-motion seeking to shift costs associated

with producing and reproducing de-designated discovery materials to Plaintiff pursuant to Rule 26(c)(1)(B).[2] (Dkt. 170). Plaintiff filed a reply and opposition to Defendants' cross-motion on March 6, 2025. (Dkt. 172).

Defendants have separately filed a motion to seal Exhibits D and E of the Declaration of Heng Wang submitted in support of Plaintiff's motion to de-designate. (Dkt. 167). Exhibit D is a sample unredacted sales report and Exhibit E is a sample unredacted invoice. (Dkt. 162-4 at ¶¶ 5, 6; *see* Dkt. 162-8; Dkt. 162-9). Plaintiff does not oppose Defendants' motion to seal. (Dkt. 168).

## DISCUSSION

### I.    Plaintiff's Motion to De-Designate

#### A.    Legal Standard

Under Rule 26, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). This rule "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of

---

[2]    Defendants allege in their cross-motion that Plaintiff violated the Protective Order by "transmitting Confidential and [AEO] documents to recipients who are not permitted to receive such documents" (Dkt. 170-1 at ¶ 21; *see* Dkt. 170-3 at ¶¶ 21-30), and state that Foundry "intends to seek sanctions against Plaintiff and [Xiao] for these flagrant violations . . . in a separate, forthcoming motion." (Dkt. 170-19 at 11). Given that Defendants have yet to file any such a motion, the Court does not reach this issue in the instant Decision and Order.

protection is required." *In re Zyprexa Inj.*, 474 F. Supp. 2d 385, 415 (E.D.N.Y. 2007) (quoting *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 36 (1984)).

Parties may "seek a protective order that delineates general categories of information appropriate for confidentiality protection and permits the parties to designate information as confidential based upon their good faith belief that the produced information falls within those categories and that confidential treatment is warranted." *Nanjing CIC Int'l Co. v. Schwartz*, No. 20-CV-7031EAW, 2023 WL 6958787 at *3 (W.D.N.Y. Oct. 20, 2023); *see generally In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 243 (S.D.N.Y. 2009).   The requirement to show good cause generally does not arise "'until a party or intervenor challenges the continued confidential treatment of particular documents,' at which point the designating party bears '[t]he burden of establishing good cause' for the protection afforded by the designation." *Nanjing CIC Int'l Co.*, 2023 WL 6958787 at *3 (quoting *In re Parmalat Sec. Litig.*, 258 F.R.D. at 243); *see also Cachet Fin. Servs. v. MyPayRollHR*, No. 1:19-CV-1181 FJS CFH, 2020 WL 7129921 at *4 (N.D.N.Y. Sept. 9, 2020) (explaining that when a party "exercise[es] its right under the terms of [a] Consent Protective Order to challenge the designation of [a] document[] . . . the Court must examine the matter *de novo*, the central inquiry being whether the party designating the documents as confidential has shown good cause to support that designation." (quotations and citations omitted)); *In re Zyprexa Inj.*, 474 F. Supp. 2d at 416 (explaining that after a challenge to a confidentiality

designation, "the burden of establishing that there is good cause to protect the designated materials rests at all times with the party seeking protection").

In assessing good cause, the Court applies the standard for determining whether a protective order under Rule 26(c) should be issued. *See Schiller v. City of New York*, No. 04 CIV. 7921 KMK JCF, 2007 WL 136149, at *4 (S.D.N.Y. Jan. 19, 2007). Good cause exists "when a party shows that disclosure will result in a clearly defined, specific and serious injury." *Matter of Energetic Tank, Inc.*, 567 F. Supp. 3d 453, 456 (S.D.N.Y. 2021) (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 454 F.Supp.2d 220, 222 (S.D.N.Y. 2006)); *see also United States v. Smith*, 985 F. Supp. 2d 506, 523 (S.D.N.Y. 2013) ("Indeed, good cause remains the standard even where parties consent to a stipulated protective order.") (quotation omitted). "[W]hether a movant has demonstrated good cause is an unusually fact-sensitive inquiry." *Condit v. Dunne*, 225 F.R.D. 113, 116 (S.D.N.Y. 2004) (quotation omitted). The good cause determination "is singularly within the discretion of the district court and may be reversed only on a clear showing of abuse of discretion." *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992).

**B.    De-Designation of the 2023 and 2024 Sales Reports is Not Warranted**

Plaintiff asks the Court to order Defendants to "de-designate and redact" sales reports produced subsequent to the October 2023 Order. (Dkt. 162-1 at 6). These sales reports are from 2023 and 2024. (Dkt. 162-2 at ¶ 27). Plaintiff argues that the October 2023 Order requires the Court to order the relief it requests, as does the doctrine of law of the case. (*See* Dkt. 162-1 at 5-6; Dkt. 172 at 6-8).

Plaintiff's arguments are based on its contention that in the October 2023 Order, "the Court concluded that the sales reports did not qualify as AEO designation." (Dkt 162-2 at ¶ 13). This contention is incorrect.

As set forth above, the October 2023 Order granted in part and denied in part "[Plaintiff]'s motion to remove the [AEO] designation from a [Sales Report] produced by defendants[.]" (Dkt. 82 at 1). In short, the October 2023 Order directed Defendants to remove the AEO designation from: (1) the names of Plaintiff's prior customers; and (2) the Customer Invoiced Amounts found on the Sales Report, while retaining the AEO designation for all remaining Sales Report information. (*Id.* at 5, 11-15). Defendants were directed to produce a de-designated and redacted version of the Sales Report containing "information predating 2018 relating to prior CIC customers limited to their names, the invoice number, invoiced amount, and amount received." (*Id.* at 15). This de-designated and redacted version of the Sales Report was to be "marked 'For Litigation Only' to reflect [Plaintiff's] agreement to use the information only (1) in connection with this litigation; and (2) to submit to the court in China to support its damages claims against [Chen] in the Chinese Litigation." (*Id.*).

Nothing in the October 2023 Order compels the conclusion that it was improper for Defendants to designate the unredacted sales reports from 2023 and 2024 as AEO, inasmuch as those unredacted sales reports contain information properly designated as such. Nor did the October 2023 Order require production of redacted sales reports marked For Litigation Only with respect to information

post-dating 2018, which sales reports from 2023 and 2024 indisputably constitute. Further, Defendants acknowledge that the Customer Invoice Amounts in the 2023 and 2024 sales reports are Confidential and not AEO. (Dkt. 170-19 at 20). Defendants are correct that the October 2023 Order did not require those Confidential amounts to be marked For Litigation Only. Plaintiff's arguments based on the October 2023 Order are based on a misunderstanding of what that Order required.

Plaintiff's arguments based on the law of the case doctrine fare no better. The law of the case doctrine "holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case, unless cogent and compelling reasons militate otherwise." *United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir. 2002) (quotations omitted). Plaintiff invokes the law of the case doctrine to argue that Defendants' AEO designation of the 2023 and 2024 sales reports is improper because the "issue has been previously decided by the Court, and [the Court] ordered Defendants to de-designate all sales reports produced in Subsequent Production as 'For Litigation Only,' with post-2018 sales reports de-designated as both 'Confidential' and 'For Litigation Only'. . . ." (Dkt. 172 at 8).[3] As explained above, the October 2023 Order

---

[3]    Despite Plaintiff's contention that the For Litigation Only designation is superfluous if it "permits Plaintiff to use only non-confidential pre-2018 sales report[s]" in its Chinese litigation because without a Confidential or AEO designation "Plaintiff [is] automatically permitted to use . . . those non-confidential report" (Dkt. 172 at 8-9), the For Litigation Only designation serves the important function of prohibiting use of discovery materials for a non-litigation purpose. (*See* Dkt. 82 at 15); *see, e.g., Sampel v. Livingston Cnty.*, No.

did not require that Defendants remove the AEO designation from all sales reports, nor that post-2018 sales reports be designated For Litigation Only. Thus, the Court finds the law of the case doctrine does not support Plaintiff's motion to de-designate and mark as For Litigation Only the 2023 and 2024 sales reports.

Plaintiff also argues that the designation of the 2023 and 2024 sales reports as AEO has improperly hindered its prosecution of this case, because "Plaintiff possesses both industry knowledge and specific expertise regarding its own products, which its counsel and expert lack." (Dkt 172 at 15). Defendants contend that their AEO designation of the 2023 and 2024 sales reports is necessary because disclosure of the names of Foundry's customers previously unknown to Plaintiff "would harm [Foundry] by giving a direct competitor (Xiao Su, doing business through [Plaintiff]) access to information about US customers who are buying cast-metal parts from [Foundry]'s new Chinese supplier . . . [that] [Xiao] could then use . . . to compete directly against Foundry for future business from those customers." (Dkt. 170-1 at ¶ 12). Defendants also argue that if Plaintiff learned its "commission rates and amounts [owed]" regarding Foundry's otherwise unknown customers, Plaintiff "could use such information to try to "underbid on part orders for the same customers." (*Id.* at ¶ 13).

The Court finds that these representations identify "a clearly defined,

---

17-CV-06548-EAW-MJP, 2019 WL 6695916, at *3 (W.D.N.Y. Dec. 9, 2019) ("Nevertheless, parties are free to disseminate discovery materials that are not placed under a protective order as they see fit.") (citing *Schiller,* 2007 WL 136149, at *2).

specific and serious injury" that could result from the removal of the AEO designation from the 2023 and 2024 sales reports. *See In re Terrorist Attacks on Sept. 11, 2001*, 454 F.Supp.2d at 222. As Plaintiff previously conceded on the record (*see* Dkt. 82 at 5), the names of customers unrelated to Plaintiff and the amounts Foundry charges in conducting its business are the sort of commercially sensitive information Rule 26 is appropriately invoked to protect. *See* Fed. R. Civ. P. 26(c)(1)(G); *see also McDonnell v. First Unum Life Ins. Co.*, No. 10 CV 08140 RPP, 2012 WL 13933 at *3 (S.D.N.Y. Jan. 4, 2012) (explaining that nonpublic business information "valuable in the hands of a competitor . . . should remain confidential as . . . [it constitutes] information which is commercially sensitive") (quotation and citations omitted). Defendants have shown good cause for the 2023 and 2024 sales reports to retain their AEO designation and have "b[orne] the[ir] burden of establishing the propriety of [their] destination[s]" as required under the Protective Order. (Dkt. 56 at ¶ 5).

For these reasons, the Court denies Plaintiff's request to require Defendants to de-designate and redact the 2023 and 2024 sales reports.

### C. De-Designation of Invoices is not Warranted

Plaintiff also moves for de-designation of three pieces of information on the redacted invoices underlying the sales reports: the date, invoice number, and total amount. (Dkt. 162-2 at ¶ 27; *see also* Dkt. 162-1 at 6-10). Plaintiff argues that the October 2023 Order established that information including invoice numbers and invoice amounts is not entitled to AEO protection, and that the same rationale

applies to this information when it is found in the invoice itself. (Dkt. 162-1 at 7-8). Plaintiff further argues that it requires access to this information to properly assess its damages. (*Id*.). Plaintiff also contends that the redacted invoices should be labeled For Litigation Only, because they are necessary for use in the Chinese litigation as well as in this litigation. In opposition, Defendants argue that: (1) they have fully complied with the parties' on-the-record agreement, reached in April 2024, regarding redaction of invoices; and (2) the invoices are entitled to AEO protection due to the transaction-level data they contain. (Dkt. 170-19 at 15-16).

As an initial matter, the Court agrees with Defendants that they have complied with the parties' prior agreement regarding designation and production of invoices. The Court explained in its April 2024 Order granting in part and denying in part Plaintiff's motion to compel filed on February 14, 2024, that "defendants agreed to produce redacted versions of the invoices and to designate them as 'Confidential,' not [AEO] [with] [t]he redacted versions of the invoices [] permit[ing] Plaintiff to view the product numbers and product descriptions contained on the invoices. . . ." (Dkt. 111 at 3). The Court continued that "[t]he unredacted versions of the invoices . . . w[ould] retain the [AEO] designation." (*Id*.). This Order was based on an exchange at oral argument wherein the parties explained to Judge Payson that this was the agreement they had reached. (*See* Dkt. 170-13 at 7-8). It is undisputed that following the April 2024 Order, Defendants replaced the AEO designation applied to the product numbers and

descriptions contained on the invoices with a Confidential designation, and produced redacted invoices to Plaintiff on November 26, 2024. (Dkt. 170-3 at ¶ 20; *see, e.g.,* Dkt. 162-1 at 7; Dkt. 162-2 at ¶ 16; Dkt. 162-4 at ¶ 17; Dkt. 170-19 at 10). The Court thus rejects Plaintiff's contention that the Court's prior rulings resolve the matter in its favor.

However, the Court notes that it was clear in April 2024 that the issue of what information in the invoices could be designated AEO was open to additional litigation. (*See* Dkt. 170-13 at 9). Defendants' compliance with the parties' April 2024 agreement does not relieve Defendants of their burden to demonstrate that the three specific pieces of information now sought by Plaintiff— the invoice date, invoice number, and total amount—are entitled to AEO protection. The Court accordingly turns to the merits of that question.

Defendants argue that the Protective Order expressly provides for AEO protection of "specific business patterns" and "procurement habits," and that producing the transaction-level data sought by Plaintiff would fall into these categories and allow a competitor to obtain a business advantage by accessing commercial terms of sale. (Dkt. 170-19 at 14-15). Defendants have further explained that Foundry's customers do not want their ordering history to be made public. (Dkt. 170-1 at ¶ 18). Plaintiff argues in reply that it "has not sought access to unit price and quantity order [information] . . . [but] seeks only information regarding the date, invoice number and total amount. . . ." (Dkt. 172 at 11 (quotations omitted)). Plaintiff contends that Defendants have not adequately

addressed the specific information it seeks, nor "demonstrate how disclosing any of these specific items to Plaintiff will cause irreparable harm or materially impair the legitimate competitive position of [Foundry]." (*Id*. (quotation omitted)).

Having carefully considered the parties' positions, the Court agrees with Defendants that revealing the information sought by Plaintiff would, in the aggregate, reveal key information about customers' ordering histories, allowing Plaintiff and other potential competitors to understand the volume and frequency at which Foundry's customers order products. The Court further agrees with Defendants that this constitutes "procurement habits" and "specific business patterns," which are expressly and appropriately afforded AEO protection by the Protective Order. Defendants have shown good cause for their designation of the information at issue as AEO, and have accordingly borne their burden with respect to opposing Plaintiff's request for de-designation.  Plaintiff's request for additional redacted versions of the invoices at issue is accordingly denied.

## II.    <u>Use of Discovery Material in the Chinese Litigation</u>

In their briefing, the parties argue at length regarding the appropriateness of Plaintiff using discovery in this matter to further its position with respect to the Chinese litigation. (*See, e.g.,* Dkt. 170-19 at 20-23; 172 at 13-15). However, having determined that Plaintiff's requests for de-designation and for designation of materials as For Litigation Only should be denied for the reasons discussed above, the Court need not and does not address this issue any further at this time.

III.  **Awards of Attorney's Fees and Costs and Cost-Shifting are Not Warranted**

A.  **Plaintiff's Request for Attorney's Fees and Costs**

Plaintiff has requested that "the Court impose attorney's fees and costs result[ing] from improper AEO designations, including the fees and costs associated with bringing [its] motion" pursuant to Federal Rule of Civil Procedure 37. (*Id.* at 9; *see, e.g.,* Dkt. 162-2 at ¶ 28; Dkt 172 at 16-17). Having denied Plaintiff's motion to de-designate for the reasons discussed above, the Court declines to impose attorney's fees and costs.

B.  **Defendants' Cross-Motion for Cost-Shifting**

Under Rule 26(c), "[a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . [and] [t]he court may, for good cause, issue an order to protect a party or person," including specifying terms such as "time and place . . . for the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(B).  The general rule is that the responding party bears all costs of production. *See, e.g., Novick v. AXA Network, LLC*, No. 07 CIV. 7767, 2013 WL 5338427, at *3 (S.D.N.Y. Sept. 24, 2013) ("The presumption is that the responding party must bear the expense of complying with discovery requests, but he may invoke the district court's discretion under Rule 26(c) to grant orders protecting him from 'undue burden or expense' in doing so, including orders conditioning discovery on the requesting party's payment of the costs of discovery.") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358 (1978)); *Hallmark v. Cohen & Slamowitz, LLP*, No. 11-CV-842W(F), 2016 WL

1128494, at *3 (W.D.N.Y. Mar. 23, 2016) ("[I]n federal civil discovery it is presumed that a responding party will bear the expense of production.").

"Notwithstanding operation of the general rule, a court may, under limited circumstances, consider 'cost-shifting' of such production expenses to the requesting party." *Bailey v. Brookdale Univ. Hosp. Med. Ctr.*, No. CV162195ADSAKT, 2017 WL 2616957, at *4 (E.D.N.Y. June 16, 2017). Generally, "such a deviation 'should be considered *only* when electronic discovery imposes an "undue burden or expense" on the responding party'." *Id.* (quoting *Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 324 (S.D.N.Y. 2003) and emphasis in original). If this threshold requirement is met, the Court then considers the following factors set forth in *Zubulake*: (1) the extent to which the request is specifically tailored to discover relevant information; (2) the availability of such information from other sources; (3) the total cost of production, compared to the amount in controversy; (4) the total cost of production, compared to the resources available to each party; (5) the relative ability of each party to control costs and its incentive to do so; (6) the importance of the issues at stake in the litigation; and (7) the relative benefits to the parties of obtaining the information. *Zubulake*, 217 F.R.D. at 322; *see Bailey*, 2017 WL 2616957, at *4.

Here, Defendants have cross-moved seeking to impose costs, including attorney's fees, associated with producing de-designated discovery material upon Plaintiff pursuant to Rule 26(c)(1)(B). (*See* Dkt. 170; Dkt. 170-19 at 24-25). Defendants cite the *Zubulake* factors and argue cost shifting is warranted

because: (1) Defendants have thus far complied with the Protective Order; (2) Plaintiff's efforts to de-designate discovery materials are improperly motivated by the goal of using the materials in Plaintiff's Chinese litigation; (3) both Rule 34 and the Protective Order only require Defendants produce one version of each relevant document rendering Plaintiff's requests for multiple versions of the same discovery materials an unnecessary cost; and (4) "[c]ost-shifting will create an incentive for Plaintiff to temper its own requests for additional productions by forcing Plaintiff to bear the full costs of such requests." (Dkt. 170-19 at 24-25). Plaintiff opposes Defendants' cross-motion, arguing that "certain information in [Defendants'] documents is subject to different levels of protection, which necessarily requires Defendants to produce multiple versions" and that "[t]o the extent Defendants produced multiple rounds of de-designated documents, it resulted from Defendants' prior designation that the Court found to be improper." (Dkt. 172 at 16).  Plaintiff contends that "[i]t is the producing party that should review and properly designate document production" and that it would be "fundamentally unfair to shift . . . costs to Plaintiff[.]" (*Id.*).

Defendants have not demonstrated that cost-shifting is warranted in this case. While Defendants "urge the application of  . . . *Zubulake's* . . . cost-shifting factors in determining their motion, they fail to mention the threshold question under the *Zubulake* standard that must be answered prior to the application of the  . . .  cost-shifting factors[.]'" *Novick*, 2013 WL 5338427 at *4 (quoting *Zubulake,* 217 F.R.D. at 317); (*see* Dkt. 170-19 at 24).  Specifically,

Defendants do not contend that the documents at issue are kept in an inaccessible format and thus that their reproductions were or will be unduly burdensome or expensive. Having failed to address this threshold requirement, Defendants have "failed to satisfy their burden of showing good cause pursuant to Rule 26(c), . . . [and must] pay the costs of producing responsive [documents]." *Novick*, 2013 WL 5338427, at *4 (citing *Zubulake,* 217 F.R.D. at 324). For these reasons, the Court denies Defendants' cross-motion for cost-shifting. (Dkt. 170).

## IV.    <u>Motion to Seal</u>

As previously noted, Defendants have filed a motion to seal Exhibits D and E to the Declaration of Heng Wang submitted in support of Plaintiff's motion to de-designate. (Dkt. 167). Plaintiff does not oppose Defendants' motion to seal. (Dkt. 168).

The Court finds that Defendants' request for sealing is narrowly tailored and supported by specific reasons. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006). The Court further finds that Defendants' memorandum of law sufficiently describes why the information contained in Exhibits D and E "is commercially sensitive, potentially harmful, and that the document[s] should be sealed to prevent competitors from utilizing this information to harm." *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559 PGG KHP, 2021 WL 1085338 (S.D.N.Y. Mar. 22, 2021); *see, e.g., Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 511 (S.D.N.Y. 2015); *GoSMiLE, Inc. v. Dr. Jonathan Levine*, D.M.D. P.C., 769 F. Supp. 2d 630, 649-50 (S.D.N.Y.

2011). Accordingly, Defendants' motion to seal Exhibits D and E attached to the Declaration of Heng Wang submitted in support of Plaintiff's motion to de-designate (Dkt. 167) is granted.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's motion for de-designation (Dkt. 162), and further denies Defendants' cross-motion (Dkt. 170) for cost-shifting. The Court grants Defendants' motion to seal Exhibits D and E attached to the Declaration of Heng Wang submitted in support of Plaintiff's motion to de-designate. (Dkt. 167).

SO ORDERED.

_Colleen D. Holland_
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:   Rochester, New York
         June 17, 2025